No. 95-022

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

NFC PARTNERS, a partnership,

Plaintiff and Appellant,

v.

STANCHFIELD CATTLE COMPANY, a Montana
corporation; ROSALEE RICHARDSON,
Clerk and Recorder of Beaverhead
County, Montana; DEK KETCHUM; RENEE
BERENSON; BILL MARKOVICH; SIDNI
MARKOVICH; LANNY M. BEATY; SUE A.
BEATY; DENNIS OSSELLO; BRENDA OSSELLO;
JACK McCLOSKEY; HELEN McCLOSKEY; MARK
MATTIOLI, LISA LOVELL; MAX MATTIOLI;
and MADISON MATTIOLI,

Defendants and Respondents.

APPEAL FROM:    District Court of the Fifth Judicial District,
                In and for the County of Beaverhead,
                The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                James H. Goetz and Robert Baldwin, Goetz, Madden
                and Dunn, P.C., Bozeman, Montana

        For Respondent:

                Ross P. Richardson, Attorney at Law, Butte, Montana

                Richard J. Orizotti, Poore, Roth & Robinson, Butte,
                Montana

                Thomas R. Scott, County Attorney, Dillon, Montana


                                Submitted on Briefs:   June 1, 1995

                                        Decided:  November 14, 1995

Filed:

_____
                Clerk

The Honorable Jeffrey M. Sherlock, District Judge, delivered the Opinion of the Court.

NFC Partners, a partnership, appeals an order of the Fifth Judicial District Court, Beaverhead County, which held that a certain Certificate of Survey filed in the office of the Beaverhead County Clerk and Recorder was properly filed so as to effect a division of land pursuant to the Montana Subdivision and Platting Act. We reverse the decision of the District Court.

We state the issue on appeal as follows:

Did the District Court err when it determined that a Certificate of Survey that was filed before the internal property monuments were set and before the corner records were filed was "properly filed" so as to create a legal division of land under the Montana Subdivision and Platting Act?

**FACTUAL BACKGROUND**

Respondent Stanchfield Cattle Company (Stanchfield) owns certain real property in Beaverhead County, Montana. In June of 1989, Stanchfield and appellant NFC Partners (NFC) entered into a "Timber Sales Agreement and Right of First Refusal." Pursuant to the right of first refusal, if Stanchfield ever desired to sell its property and received a bona fide offer for the purchase of the property, it would provide notice to NFC. NFC would then have forty-five days in which to exercise its right of first refusal to purchase the property on identical terms as the offer.

Sometime after signing the right of first refusal, Stanchfield began taking steps to subdivide a portion of its property. Stanchfield attempted this subdivision by preparing a Certificate

2

of Survey (COS) pursuant to the provisions of the Montana Subdivision and Platting Act, §§ 76-3-101 through -614, MCA (the Act). This COS, designated COS 792, depicts nineteen parcels of property, each being over twenty acres in size and encompassing a total of approximately 491 acres.

Stanchfield retained Bill Anderson, a registered land surveyor, to prepare COS 792 during the winter of 1992-93. Anderson completed the field survey work in the early part of January 1993, and had the survey reviewed for errors and certified by an examining land surveyor on February 11, 1993. COS 792 was filed in the office of the Beaverhead County Clerk and Recorder on February 12, 1993.

At the time COS 792 was filed, however, the internal property monuments had not been set and Anderson made the following notation on the face of the COS: "NOTE: Property Corners will be set by July 1, 1993. Snow conditions prevent setting corners at this time." Anderson physically set the internal monuments on March 23, 24 and 25, 1993. Additionally, while preparing COS 792 Anderson found and used four brass-capped monuments set by the Bureau of Land Management which designated the exterior boundaries of the surveyed property. Anderson described these monuments as "public land survey corners" and filed corner cards on the corners on August 31, 1994.

After COS 792 was filed and the property monuments were set, respondents Ketchum, Berenson, Markovich, Beaty, Ossello, McCloskey and Mattioli submitted offers to purchase various of the parcels

3

created by COS 792. Stanchfield provided NFC with notice of the offers, pursuant to the right of first refusal. NFC then filed this action in Beaverhead County requesting the District Court to declare COS 792 invalid and enjoin any sales of the parcels depicted in the COS. NFC also sought an injunction to restrain respondent Rosalee Richardson, Beaverhead County Clerk and Recorder, from accepting for recordation any instrument purporting to transfer any interest in the properties.

The District Court held that physically setting the property monuments after filing the COS did not violate the spirit and intent of the Montana Subdivision and Platting Act and thus did not invalidate the survey. The District Court therefore denied NFC's petition for injunctive relief. It is from this decision that NFC appeals. The District Court also concluded that the right of first refusal granted to NFC by Stanchfield continued to be a valid and enforceable property right. This conclusion was not appealed by any party and is not an issue before us.

## DISCUSSION

At the time COS 792 was filed, the Montana Subdivision and Platting Act provided that a "subdivision" was "a division of land or land so divided which creates one or more parcels containing less than 20 acres . . . in order that the title to or possession of the parcels may be sold, rented, leased, or otherwise conveyed . . . ." Section 76-3-103(15), MCA (1991). Thus, the nineteen parcels that Stanchfield wished to create in 1992-93 would not have

4

been considered to be a subdivision because each parcel was over twenty acres in size.

The Act defines "division of land" as

> the segregation of one or more parcels of land from a larger tract held in single or undivided ownership by transferring or contracting to transfer title to or possession of a portion of the tract or <u>properly filing a certificate of survey</u> or subdivision plat establishing the identity of the segregated parcels pursuant to this chapter.

Section 76-3-103(3), MCA (emphasis added).

Because the division of land that Stanchfield wished to make was not considered to be a subdivision, Stanchfield did not need to comply with the requirements of the Act pertaining to the creation of a formal subdivision plat and subdivision review. Pursuant to the above definition of "division of land," Stanchfield opted instead to create the parcels through the filing of a certificate of survey.

Stanchfield was aware, however, when it hired Anderson to prepare COS 792, that the 1993 Legislature was considering amendments to the Act including an amendment to change the definition of a subdivision. The Legislature did amend the definition of subdivision to include any parcel of less than 160 acres, rather than only twenty acres. Section 76-3-103(14), MCA (1993). This amendment became effective on April 6, 1993.

Anderson testified that Stanchfield was concerned about getting the COS filed before any amendments to the Act changing the twenty-acre maximum for a subdivision would become effective. If the COS was not filed before the changes in the Act went into

5

effect, Stanchfield would have to go through formal subdivision procedures to create the parcels he intended to create.

Anderson also testified that because of the amount of snow on the ground at the time he did the survey work he could not set the internal monuments on the property right away. Therefore, because of the time constraints of getting the COS filed before any amendments to the Act were effective, Anderson filed COS 792 without setting the monuments and made the notation on the COS that the monuments would be set before July 1, 1993. According to Anderson, this was a common practice among surveyors because of poor weather conditions in the winter months.

The Act provides that a division of land may be made by "properly filing a certificate of survey . . . ." Section 76-3-103(3), MCA. Part of the requirements of filing a COS is that it "shall be legibly drawn, printed, or reproduced by a process guaranteeing a permanent record and <u>shall conform to monumentation and surveying requirements</u> promulgated under this chapter." Section 76-3-404(3), MCA. Pursuant to § 76-3-403, MCA, the Department of Commerce has promulgated regulations regarding monumentation and surveying requirements.

The Department of Commerce has set out uniform standards for Certificates of Survey in Rule 8.94.3002, ARM, which provides, in part

> A certificate of survey may not be filed by the county clerk and recorder unless it complies with the following requirements:
>
> . . . .

6

(4) The <u>certificate of survey shall show</u> or contain on its face or on separate sheets referenced on its face the following information only:

. . . .

(f) All monuments found, set, reset, replaced or removed describing their kind, size, location and giving other data related thereto.

(g) The location of any corners of sections or divisions of sections pertinent to the survey.

Additionally, the uniform standards for monumentation provide, in part, as follows:

<u>All monuments must be set prior to the filing of a plat</u> or certificate of survey except those monuments which will be disturbed by the installation of improvements. Such monuments may be set subsequent to filing if the surveyor certifies that they will be set before a specified date.

Rule 8.94.3001(1)(d), ARM (emphasis added).

Thus, under the mandatory language of the Act and the regulations promulgated thereunder, a COS may not be filed unless it shows all of the monuments that are set during the survey. These monuments must be set <u>prior</u> to the filing of the COS. The <u>only</u> exception to this requirement is when the construction of improvements on the property would disturb the location of the monuments. There is no exception to this requirement for when weather conditions make it difficult or impossible to set the monuments. Anderson and Stanchfield did not state, however, that the monuments were not set due to construction activity. The only reason set forth on the face of COS 792 was that snow conditions prevented setting the monuments. The statutes and regulations do

7

not provide this reason as an exception to the monumentation requirements.

The District Court relied in part on Anderson's testimony that it was a common practice among surveyors to set property monuments after filing a COS when the weather conditions are poor in determining that such action did not violate the spirit and intent of the Act. This is not, however, what the statutes and regulations state. The Act contains several specific requirements for filing a COS and we cannot allow what might be a common practice among surveyors to override the clearly stated laws and regulations as set out by the legislature and the Department of Commerce. Common practice in an industry or profession may be of some guidance when there is no stated law or the law is unclear, but this is not the situation here. We must enforce the laws of the State as enacted and cannot insert into them what is not there to begin with. Section 1-2-101, MCA.

The Montana Subdivision and Platting Act states that in order to create a division of land by the COS process, the COS must be "properly" filed. The Act and its regulations further provide that the proper filing of a COS requires that all internal property monumentation must be set prior to the filing of the COS. When Stanchfield, through surveyor Anderson, filed COS 792, it had not set the internal property monuments. The reason for not setting the monuments did not meet the only exception to this requirement provided for in the regulations. Thus, Stanchfield did not

8

"properly" file COS 792 and did not create a valid division of land under the Act.

This Court reviews a District Court's conclusions of law to determine if those conclusions are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603. We hold that the District Court erred in concluding that Stanchfield "properly" filed COS 792 and created a valid division of land when the internal property monuments were not set prior to filing the COS.

Based on the above, this matter is reversed and remanded for further proceedings consistent with this Opinion.

_____
Honorable Jeffrey M. Sherlock,
District Judge, sitting in place
of Retired Justice Fred J. Weber

We concur:

_____

_____

_____
                    Justices

9

Justice W. William Leaphart, dissenting.

I dissent from the Court's opinion and I would affirm the judgment of the District Court. It appears that Stanchfield was trying to complete the Certificate of Survey (COS) before the new law went into effect on April 6, 1993. To meet that deadline, Stanchfield filed the COS before the monuments had been set on the property. However, the internal monuments were set in March before the new law took effect and before any sales had been made. The ARMs contemplate that monuments can be set after the filing of the COS if the installation of improvements would interfere with their placement. 8.94.3001(1)(d), ARM.

In this case, according to industry custom, the monuments were not set because of the snow and weather conditions. The Court asserts that improvements are the only recognized exception to the requirement that monuments be set prior to filing the COS. Even if improvements are the only exception, the District Court found that:

> while the regulations and statutes generally requir[e] monuments to be set prior to filing the certificate of survey, they clearly recognize that conditions may make that impractical. Here, because of weather and uncertainty as to the construction of roads or other improvements, etc., the surveyor was unable to set the monuments prior to filing the COS . . . . [Emphasis added.]

This finding, which the majority fails to address, brings this case within the improvements exception. The parties agree that the purpose of the COS is to disclose "facts pertaining to boundary locations" and to "allow others to find the boundaries depicted thereon." Given that the COS and the monuments were completed before the sale in question, the agreed upon purpose was satisfied.

10

To satisfy the majority, all that Stanchfield would have been required to do is refile the COS after the monuments had been set. Here, the monuments were set before the new law went into effect and before any sales had been made. In this case, the fact that monuments were not set until approximately six weeks after COS 792 was filed does not harm the public or NFC. To require Stanchfield to refile the COS after the monuments had been set would have been to require a useless act.

Furthermore, the penalty for violating the Montana Subdivision and Platting Act is a criminal sanction. The action can be brought by the county attorney. Section 76-3-105, MCA, provides:

> Any person who violates any provision of this chapter or any local regulations adopted pursuant thereto shall be guilty of a misdemeanor and punishable by a fine of not less than $100 or more than $500 or by imprisonment in a county jail for not more than 3 months or by both fine and imprisonment. Each sale, lease, or transfer of each separate parcel of land in violation of any provision of this chapter or any local regulation adopted pursuant thereto shall be deemed a separate and distinct offense.

The appropriate remedy would have been a possible criminal action, not an action by NFC to invalidate the COS. The Court's opinion ignores the reality of the situation and permits NFC to prevail based upon a technicality that did not impair NFC's rights. Accordingly, I would affirm the District Court.

/s/ W. William Leaphart
Justice

11